CITY OF COLUMBUS, APPELLANT, *v.* FISHER, APPELLEE.

[Cite as Columbus v. Fisher (1978), 53 Ohio St. 2d 25.]

(No. 77-277—Decided January 25, 1978.)

26

*Mr. John L. Francis,* city attorney, *Mr. Richard H. Ferrel, Ms. Eugenia L. Ryan* and *Mr. Lawrence A. Garlinger,* for appellant.

*Mr. James Kura, Mr. Phillip J. Cykon* and *Mr. Richard Curtner,* for appellee.

*Per Curiam.* The subsection of the municipal ordinance here under review is identical to R. C. 2921.13(A) (3), which statute became effective in 1974 as a part of the new Criminal Code. (See 134 Ohio Laws 1866, 1949-50.) The offense of unsworn falsification with purpose to mislead a public official had no precise parallel in prior state law,[2] and was patterned after Section 241.3 of the Model Penal Code.[3] Originally presented to the American Law Institute in 1957, as Section 208.22 of Tentative Draft No. 6 of the Model Penal Code, the comments upon this section are quite germane. The following appears at pages 141-142 of that draft.

"'This section was suggested by 18 U. S. C. §1001, which authorizes imprisonment up to 5 years for a knowing misstatement of material fact 'in any matter within the jurisdiction of any department or agency of the Unit-

---

[2] There were, however, certain sections in the former law which attached a penalty for unsworn falsification made in connection with particular documents. For example, former R. C. 2911.03 prohibited the making of false written statements with intent that such statements be relied upon in evaluating the financial condition, property indebtedness or ability to pay of the person making the statement.

[3] Section 241.3 of the American Law Institute's Model Penal Code (1974 Ed.) reads as follows:

"Unsworn Falsification to Authorities

"(1) In General. A person commits a misdemeanor if, with purpose to mislead a public servant in performing his official function, he:

"(a) makes any written false statement which he does not believe to be true; or

"(b) purposely creates a false impression in a written application for any pecuniary or other benefit, by omitting information necessary to prevent statements therein from being misleading; or

"(c) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or

"(d) submits or invites reliance on any sample, specimen, map, boundary-mark, or other object which he knows to be false.

"(2) Statements 'Under Penalty.' A person commits a petty misdemeanor if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

"(3) Perjury Provisions Applicable. Subsections (3) to (6) of Section 241.1 apply to the present section."

ed States.' [Footnote omitted.] The statute also reaches one who 'conceals or covers up by any trick, scheme, or device a material fact.' The false statement need not be sworn, nor even in writing. No state law of equal breadth has come to our attention, and the federal courts have inclined to limit the apparent scope of §1001 by strict construction of 'matter within the jurisdiction.' [Footnote omitted.] * * *

"We believe that 18 U. S. C. §1001 offers a valid suggestion for general extension of the law of punishable misstatements; but that *it goes too far in several respects, viz., inclusion of oral misstatements;* the excessive penalty; and failure to require proof of intent to mislead. It is probable that these aspects of §1001 are almost accidental consequences of the history of that law. It began as a provision limited to pecuniary fraud on the government; only in 1934 was it amended to cover false statements generally. [Footnote omitted.] As a fraud provision, it properly embraced oral statements, and a 5 year penalty would be appropriate. Also false statements made to defraud clearly imply an intent to mislead. But, *as a general prohibition of lying in official matters, §1001 flies in the face of penal policy embodied in our proposed grading of perjury and false swearing, and in our careful delimitation of punishable oral misstatements to law enforcement officers.*" (Emphasis added.)‘

The commentators point out that the proposed model section (now Section 241.3), in an attempt to improve upon its federal counterpart, imposes the additional requirements that the misstatement, to be punishable, must be in writing, and that intent to mislead must be established.

We share the view intimated by the Court of Ap-

‘Although Section 1001, Title 18, U. S. Code, remains unchanged since its enactment in 1948, judicial and congressional disquietude about the potential reach of this statute was one factor which led to the creation of the National Commission on Reform of Federal Criminal Laws. See 1 U. S. Reform of Criminal Laws National Commission, Working Papers, 668-669, (1970).

peals below that subsection 3 of the disputed municipal ordinance and, necessarily, R. C. 2921.13(A)(3), must be given a limitative judicial construction. It is otherwise conceivable that this legislation, with its considerable maximum penalties, could provide a strong impetus for 'the employment of coercive inquisition as a method of criminal investigation.

We do not believe that either the municipal or state law-making bodies, presumably having read the American Law Institute's caveat in regard to the federal code section, ever intended to make the utterance of unsworn oral misstatements, in response to inquiries initiated by law enforcement officials, punishable conduct.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

HERBERT, J., concurs in the judgment.